# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
OSHONYA SPENCER, CHARLES            :
STRICKLAND, and DOUGLAS             :
McDUFFIE, on behalf of themselves   :
and all others similarly situated,  :           No. 3:05-cv-01681 (JCH)
                                    :
        Plaintiffs,                 :
                                    :
            v.                      :
                                    :
THE HARTFORD FINANCIAL SERVICES     :
GROUP, INC., HARTFORD LIFE, INC.,   :
HARTFORD LIFE INSURANCE             :
COMPANY, HARTFORD ACCIDENT AND      :
INDEMNITY COMPANY, HARTFORD         :
CASUALTY INSURANCE COMPANY,         :
HARTFORD INSURANCE COMPANY OF       :
THE MIDWEST and HARTFORD FIRE       :
INSURANCE COMPANY,                  :
                                    :
        Defendants.                 :
-------------------------------------------------------x
```

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS
### PART B (pp. 1-28)

Dated: June 14, 2006

James H. Bicks
Robert M. Langer
WIGGIN AND DANA LLP
400 Atlantic Street
Stamford, Connecticut  06911-0325
(203) 363-7600

Charles E. Tebbe III
John W.R. Murray
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104-0050
(212) 468-8000

Attorneys for Defendants

Defendants The Hartford Financial Services Group, Inc. ("HFSG"), Hartford Life, Inc. ("Hartford Life"), Hartford Life Insurance Company ("Hartford Life Insurance"), Hartford Accident and Indemnity Company ("Hartford Accident"), Hartford Casualty Insurance Company ("Hartford Casualty"), Hartford Insurance Company of the Midwest ("Hartford Midwest") and Hartford Fire Insurance Company ("Hartford Fire") respectfully submit this memorandum of law in support of their motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the amended complaint of plaintiffs Oshonya Spencer ("Spencer"), Charles Strickland ("Strickland") and Douglas McDuffie ("McDuffie"), filed on May 1, 2006, on behalf of themselves and all others similarly situated (the "Amended Complaint" or "Am. Compl.").

## PRELIMINARY STATEMENT

Plaintiffs' amendment of their original complaint has not remedied the fatal defect in that pleading: they can point to no act by any defendant that was inconsistent with the terms of the integrated settlement agreements from which this action arises. Indeed, the new allegations contained in their amended pleading make plain that no such act occurred.

Plaintiffs' claims are based upon settlement agreements that they each entered into with, respectively, Hartford Accident, Hartford Casualty and Hartford Midwest (collectively, the "Hartford Insurers") after suffering personal injuries in automobile accidents involving persons insured by a Hartford Insurer. Each plaintiff subsequently settled his or her personal injury claim against his or her alleged tortfeasor and that tortfeasor's Hartford Insurer. Pursuant to their integrated settlement agreements (the "Settlement Agreements"), a portion of each plaintiff's settlement proceeds was to be provided in the form of a "structured settlement," whereby the relevant Hartford Insurer would purchase an annuity that would provide each plaintiff with certain future periodic payments. Accordingly, the Hartford Insurers purchased annuities to fund

those future payments, and paid routine brokers' commissions in connection with those purchases.

Plaintiffs here do not allege that the Hartford Insurers failed to purchase the subject annuities, that the Hartford Insurers failed to spend the amounts that they allegedly promised to purchase the annuities, or that they have not received the lump sum and periodic payments promised by their Settlement Agreements. Notwithstanding these undisputed facts, plaintiffs claim that their Agreements have been breached because the Hartford Insurers paid the annuity brokers' commissions from the funds that the Hartford Insurers agreed to spend on the subject annuities, instead of paying those commissions as an added "defense cost," above and in addition to the amounts spent on the annuities themselves. As a result, they claim, the Hartford Insurers did not purchase annuities having the "cost or present value" allegedly promised by their Settlement Agreements.

The fully integrated Agreements of plaintiffs Spencer and McDuffie, however, contain no provisions regarding the "cost or present value" of the annuities that funded their settlements. The only monetary consideration that the Hartford Insurers agreed to pay pursuant to those Agreements is an initial lump sum payment and subsequent periodic payments through the purchase of an annuity of *indeterminate* value. Spencer's and McDuffie's attempts to add a term regarding the "cost or present value" of the contemplated annuities – and thereby vary the consideration to be paid pursuant to their integrated Settlement Agreements – fly in the face of the written agreements they signed, and are, therefore, barred by the parol evidence rule.

Moreover, even assuming, *arguendo*, that plaintiffs Spencer's and McDuffie's Agreements did contain representations concerning the "cost or present value" of the annuity to be purchased – as was the case with the remaining plaintiff, Strickland – it is apparent from the

2

Amended Complaint that the Hartford Insurers performed that alleged obligation.  Although plaintiffs allege that the Hartford Insurers should have spent all of the funds at issue on the annuities themselves – and not on the brokers' commissions – they admit in their amended pleading that the payment of commissions is a cost that is incidental to the purchase of an annuity.  Plaintiffs' breach of contract claims thus fail because the Hartford Insurers did exactly what they allegedly promised to do – spend a specified sum to purchase an annuity "costing" a particular amount.

Plaintiffs also assert a claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").  Courts, however, repeatedly have chastised plaintiffs who, like Spencer, Strickland and McDuffie, inappropriately attempt to inject "overtones of criminality" into garden-variety commercial disputes, like the one at hand, by invoking that statute.  Moreover, plaintiffs' RICO claim fails because:  (i) the alleged RICO "enterprise," which consists merely of defendant HFSG and its subsidiaries and agents acting within the scope of their regular business activities, does not meet the Second Circuit's distinctiveness requirement; and (ii) with respect to plaintiffs Spencer and McDuffie, any claims of justifiable reliance on the alleged misrepresentations that form the basis for the underlying mail and wire fraud allegations are barred by the integration clauses contained in their Settlement Agreements.

Plaintiffs' third claim, for common law fraud, also cannot withstand the present motion to dismiss.  First, it is barred by the economic loss doctrine (or state-specific variants thereof) because it merely restates plaintiffs' contract claims.  Moreover, with respect to plaintiffs Spencer and McDuffie, the fraud claim fails because neither can credibly allege that his or her reliance on the alleged misrepresentations regarding the annuity's "cost or present value" was

justified, inasmuch as those representations are inconsistent with the monetary consideration recited in their respective Settlement Agreements.

For the same reasons, plaintiffs' new claim for civil conspiracy is not viable. To state a cause of action for civil conspiracy, a plaintiff must allege, among other things, a combination of two or more persons to commit a tort. Because plaintiffs have failed to state a claim for fraud or any other tortious conduct, their civil conspiracy claim cannot survive defendants' motion to dismiss.

In sum, despite having added substantial heft to their original complaint, plaintiffs simply cannot plead around the fatal defects in that pleading. Accordingly, the Amended Complaint should be dismissed in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

Plaintiffs Spencer, Strickland and McDuffie were injured in automobile accidents involving individuals respectively insured by Hartford Midwest, Hartford Casualty and Hartford Accident.[1] (Am. Compl. ¶¶ 3-5.) Each of these individuals brought personal injury claims as a result of those accidents, and each of them, represented by counsel, chose to settle those claims. (*Id.* ¶¶ 3-5; 54-56.) As part of his or her settlement, each plaintiff chose to receive a structured settlement, whereby an annuity was purchased from Hartford Life Insurance by the respective

---

[1] Although defendants dispute many of plaintiffs' factual allegations, for purposes of the present motion, plaintiffs' allegations – to the extent they are well pled – must be accepted as true. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). The factual background set forth herein is, therefore, based on the allegations in the Amended Complaint, as well as documents referenced in the Amended Complaint, including plaintiffs' respective Settlement Agreements, which the Court may consider on a 12(b)(6) motion. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (documents that are "integral to" and "relied upon" in complaint may be considered on motion to dismiss).

Hartford Insurer with whom he or she settled, in order to make the future periodic payments contemplated by those settlements. (*Id.* ¶¶ 54-56.)

## A.   Plaintiffs' Structured Settlements

The terms of the structured settlements at issue are set forth in each plaintiff's written, fully integrated Settlement Agreement. (Affidavit of Charles E. Tebbe III in Support of Defendants' Motion to Dismiss, sworn to on June 14, 2006 (the "Tebbe Aff."), Exs. 1 (Settlement Agreement and Release, executed November 29, 2004 (the "Spencer Agreement")), 2 (Release and Settlement Agreement, executed February 8, 2002 (the "McDuffie Agreement")), and 3 (General Release, executed December 10, 2003 (the "Strickland Agreement").)[2] Although the particular provisions differ, each Agreement contains a broadly worded release, a disclaimer of reliance and a choice of law provision. Further, the only parties to these Agreements are plaintiffs and the respective Hartford Insurer with whom they settled – neither Hartford Life Insurance, nor any other Hartford entity, is party to these contracts. (Tebbe Aff. Exs. 1-3.)

### 1.   Spencer's Settlement Agreement

The Spencer Agreement sets forth the specific terms of the structured settlement that she was to receive in exchange for her release of Hartford Midwest and its insured. In addition to an initial lump sum payment of $48,000, the Spencer Agreement provides that Hartford Midwest will pay Spencer "$494.58/month for 10 years certain, beginning January 1, 2005." (Spencer Agreement ¶ 2, Tebbe Aff. Ex. 1.) The Agreement provides that this obligation "will be met through the purchase of an annuity" from Hartford Life Insurance (*id.*), but contains no provision

---

[2] Plaintiffs allege in the Amended Complaint that their respective Settlement Agreements included not only the Settlement Agreement itself, but also a "collection" of extraneous documents. (Am. Compl. ¶¶ 3-5.) Because each of the Settlement Agreements is fully integrated, however, it is impossible for plaintiffs to vary their terms by adding a "collection" of additional documents. (*See* Point II.A, below.)

concerning the cost, present value or any other financial aspect of that instrument.  Plaintiffs do

not allege that Spencer did not receive the sums specified in her Settlement Agreement.

The Spencer Agreement also includes an integration clause, which states that the

Agreement "contains the entire agreement" between the parties "with regard to the matters set

forth in it."  (*Id.* ¶ 10.)  Further, the Agreement – which provides that it "shall be construed and

interpreted in accordance with" Ohio law (*id.* ¶ 12) – includes the following representation of

comprehension and disclaimer of reliance:

> SPENCER represents that she has relied upon the legal advice of
> her attorneys, who are the attorneys of Claimant's own choice, and
> that the terms of this Agreement have been completely read and
> explained to OSHONYA SPENCER by her attorneys, and that
> those terms are fully understood and voluntarily accepted by
> Claimant.  OSHONYA SPENCER SPECIFICALLY
> acknowledges that she has not relied on any legal, financial, tax or
> other advice from [Hartford Midwest].

(*Id.* ¶ 8.)

In addition to the terms recited above, the Amended Complaint alleges that certain terms

that are not contained in the integrated Spencer Agreement are, nevertheless, part of her contract

with Hartford Midwest.  Specifically, Spencer alleges that her contract with Hartford Midwest

required it to purchase an "annuity costing $52,000" (Am. Compl. ¶ 54(h)), notwithstanding the

fact that no such term is contained in the Spencer Agreement.  But even if the insertion of this

new term into her integrated Agreement is permissible – and, as set forth in Point II.A, below,

Defendants vigorously contend that it is not – it bears emphasis that the Amended Complaint

acknowledges that Hartford Midwest did, in fact, spend $52,000 to purchase the annuity at issue.

(*Id.* ¶¶ 54(c)-54(l).)

### 2.     McDuffie's Settlement Agreement

The McDuffie Agreement sets forth the specific terms of the structured settlement McDuffie was to receive in exchange for his release of Hartford Accident and its insured. (McDuffie Agreement ¶ 5, Tebbe Aff. Ex. 2.)  In addition to a lump sum payment of $13,231.18, the McDuffie Agreement provides that Hartford Accident will pay McDuffie "the sums of … $12,193.28" for five years annually, beginning on August 23, 2009. (*Id.*)  The Agreement provides that Hartford Accident "shall purchase an annuity" from Hartford Life Insurance (*id.* ¶ 8), but does not make any representations concerning the cost, present value or any other financial aspect of the annuity.  As with respect to Spencer, the Amended Complaint does not allege that McDuffie did not receive the amounts promised pursuant to his Settlement Agreement.

Like the Spencer Agreement, the McDuffie Agreement contains an integration clause, which provides that the Agreement "contains the entire agreement between the parties with regard to the matters set forth" therein.  (*Id.* ¶ 13.)  The Agreement also contains a disclaimer of reliance that provides:

> It is expressly warranted by [McDuffie] that no promise or inducement has been offered except as herein set forth, [and] that this [Agreement] is executed without reliance upon any … representations of the person or parties released … .

(*Id.* ¶ 12.)  In addition, the McDuffie Agreement – which provides that it "shall be construed and interpreted in accordance with" the laws of the State of Connecticut (*id.* ¶ 14) – contains a representation of comprehension that provides:

> We have read this RELEASE carefully before signing.  We apply our signatures voluntarily and with full knowledge and understanding of the contents of this AGREEMENT.

(*Id.* ¶ 15.)

As with the Spencer Agreement, the Amended Complaint alleges that certain terms that are not contained in the integrated McDuffie Agreement are, nonetheless, part of his contract with Hartford Accident.  Specifically, McDuffie alleges that his contract with Hartford Accident required it to purchase an "annuity costing $36,768.82" (Am. Compl. ¶ 56(g)), notwithstanding the fact that no such term is contained in the parties' Agreements.  In any event, as is the case with Spencer, even if the addition of this new term into McDuffie's integrated Agreement is permissible, the Amended Complaint acknowledges that Hartford Midwest did, in fact, spend $36,768.82 to purchase the annuity at issue.  (*Id.* ¶¶ 56(b)-56(l).)

### 3.    Strickland's Settlement Agreement

The Strickland Agreement sets forth the specific terms of the structured settlement Strickland was to receive in exchange for his release of Hartford Casualty and its insured. (Strickland Agreement, ¶¶ 1-4, Tebbe Aff. Ex. 3.)  In addition to an initial lump sum payment of $229,929, the Strickland Agreement provides that Hartford Casualty will make "future periodic payments ... having a present value of $50,071.00" as follows:  (i) "$250.00 per month ... [for] 15 years ... [beginning on] January 17, 2004"; and (ii) the sums of $4000, $10,000 and $15,000 on December 17, 2008, December 17, 2013 and December 17, 2018, respectively.  The Agreement further provides that Hartford Casualty "reserve[s] the right" to fund those future periodic payments "through the purchase of an annuity policy." (*Id.* ¶ 6.)  The Amended Complaint acknowledges that Hartford Casualty spent $50,071.00 to purchase the subject annuity.  (Am. Compl. ¶¶ 55(b)-55(l).)

The Strickland Agreement also contains a disclaimer of reliance, pursuant to which Strickland "represents that he has relied upon the advice of his attorneys," and "acknowledge[s] and affirm[s] that [he has] not received any legal advice concerning this settlement or its tax consequences from [Hartford Casualty]." (Strickland Agreement, ¶¶ 5, 6, Tebbe Aff. Ex. 3.)

Strickland further represented in the Agreement that he "ha[d] read the foregoing release and fully understood it." (*Id.*)  Finally, the Strickland Agreement provides that it "shall be construed and interpreted in accordance with the laws of the State of Maryland." (*Id.* ¶ 10.)

### B.    The Alleged Breaches of Contract

The Amended Complaint alleges that the Hartford Insurers with which the plaintiffs negotiated their respective Settlement Agreements did not purchase annuities having the "cost or present value" promised by those Agreements (Am. Compl. ¶ 58),[3] notwithstanding the fact that that pleading acknowledges that each of the Hartford Insurers paid the exact amount it allegedly promised to spend to purchase each of the annuities at issue – namely, $52,000 in the case of Spencer (Am. Compl. ¶¶ 54(c)-54(l)), $50,071.00 in the case of Strickland (*id.* ¶¶ 55(b)-55(l)), and $36,768.82 in the case of McDuffie.  (*Id.* ¶¶ 56(b)-56(l).)

According to plaintiffs, the Hartford Insurers breached their obligation to purchase annuities having the promised "cost or present value" because the Hartford Insurers paid the brokers' commissions from the funds that the Hartford Insurers agreed to spend on the subject annuities, instead of paying those commissions as an added "defense cost," above and in addition to the amounts spent on the annuities themselves.  (*See, e.g.*, Am. Compl. ¶¶ 46-49, 54-56, 58, 72-77.)

### C.    The Hartford Life-Hartford Fire Sharing Agreement

The Amended Complaint alleges that "all purchases and assignments of annuities for use in structured settlement cases involving personal injury claims insured by a Hartford Property & Casualty company [including, but not limited to, the Hartford Insurers] were controlled by the

---

[3] As noted, the Agreements of plaintiffs McDuffie and Spencer contain no such promise:  the only monetary consideration for which they provide is an initial lump sum payment and subsequent periodic payments, both of which were to be met through the purchase of an annuity of *indeterminate* value.  (*See* Points A.1 and A.2, above.)

employees of defendant Hartford Fire." (Am. Compl. ¶ 16.)  Plaintiffs further allege the

existence of a "Hartford Life-Hartford Fire Sharing Agreement" (the "Sharing Agreement"),

pursuant to which Hartford Life or Hartford Life Insurance agreed to make aggregate "payments

to Hartford Fire based on the commission revenue" generated by the sale of such annuities.[4]  (Id.

¶ 47.)  Plaintiffs allege that the Hartford Insurers' purchase of the annuities that funded each

plaintiff's structured settlement resulted in the payment of moneys by Hartford Life Insurance to

Hartford Fire pursuant to the Sharing Agreement.  (Id. ¶¶ 54(j), 55(j), 56(j).)

      None of the Hartford Insurers is alleged to be a party to the Sharing Agreement, and none

of the Hartford Insurers is alleged to have received or paid any moneys pursuant to that

Agreement.  Furthermore, neither Hartford Life nor Hartford Fire is alleged to have had any

contact with plaintiffs at or prior to the execution of plaintiffs' respective Settlement

Agreements.

### D.     Procedural Background

      Plaintiffs filed their original Complaint on October 31, 2005, asserting causes of action

for breach of contract, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"),

unjust enrichment, violation of RICO, fraud and a constructive trust.  Defendants moved to

dismiss that Complaint in its entirety, pursuant to Rule 12(b)(6), on February 1, 2006.  Before

that motion was fully submitted, plaintiffs filed an Amended Complaint on May 1, 2006, in

which they abandoned their CUTPA claim and added a new claim for civil conspiracy.

---

[4] The Amended Complaint is inconsistent with respect to which entity was allegedly a party to the "Sharing Agreement" with Hartford Fire.  In several portions of their pleading, plaintiffs allege that Hartford Life was the other party to that Agreement (Am. Compl. ¶¶ 22, 47), while in others, they allege that Hartford Life Insurance was the other party thereto.  (Id. ¶¶ 54(j), 55(j), 56(j).)

**ARGUMENT**

I.    **STANDARD ON MOTION TO DISMISS**

A motion to dismiss pursuant to Rule 12(b)(6) may be granted where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *George Campbell Painting Corp. v. Chao*, No. 3:05-CV-00716(JCH), 2006 WL 197375, at *1 (D. Conn. Jan. 25, 2006) (Hall, J.) (citation omitted). A district court must "accept[] all well-pleaded allegations as true and draw[] all reasonable inferences in favor of the pleader." *Storm v. ITW Insert Molded Prods.*, 400 F. Supp. 2d 443, 445 (D. Conn. 2005) (citations omitted). However, "bald assertions and conclusions of law will not suffice" for a complaint to survive dismissal under Rule 12(b)(6). *Chao*, 2006 WL 197375, at *1 (citation omitted).

Furthermore, in deciding a motion to dismiss, in addition to the allegations of the complaint, a court may also consider "documents attached to the complaint as exhibits or incorporated in the complaint by reference[.]" *Joiner v. Chartwells*, No. 3:05CV845(JCH), 2005 WL 3499994, at *2 (D. Conn. Dec. 20, 2005) (Hall, J.) (citation omitted).

II.   **THE BREACH OF CONTRACT CLAIM FAILS BECAUSE NONE OF PLAINTIFFS CAN ALLEGE ANY ACT INCONSISTENT WITH THE TERMS OF THEIR SETTLEMENT AGREEMENTS**

Plaintiffs' contract claim is asserted only against those defendants who are party to their respective Settlement Agreements, namely, the Hartford Insurers. As set forth below, plaintiffs' contract claim should be dismissed, with prejudice.

A.    **Plaintiffs Spencer's and McDuffie's Breach of Contract Claim Fails Because it is Based on Terms That Are Not Contained in Their Fully Integrated Settlement Agreements**

The terms that plaintiffs Spencer and McDuffie claim were breached are nowhere to be found in the unambiguous terms of their fully integrated Settlement Agreements. Spencer and

McDuffie allege that their Settlement Agreements have been breached because the Hartford Insurers did not purchase annuities having the "cost or present value" referenced in those Agreements. (*See, e.g.*, Am. Compl. ¶¶ 54(f), 55(f), 56(e), 58, 72-75.) But, in fact, those fully integrated agreements make no promises about the "cost or present value" of the contemplated annuities – the only monetary consideration for which they provide is an initial lump sum payment and subsequent periodic payments, both of which were to be met through the purchase of an annuity of indeterminate value. (Spencer Agreement ¶ 2, McDuffie Agreement ¶ 8, Tebbe Aff. Exs. 1-2).[5] Plaintiffs do not allege in this action that the Hartford Insurers failed to purchase their annuities or that they have not received the lump sum and periodic payments promised by their Settlement Agreements.

Spencer's and McDuffie's attempts to add a term regarding the "cost or present value" of the contemplated annuities – and thereby vary the consideration to be paid pursuant to their integrated Settlement Agreements – are barred by the parol evidence rule, which provides that where, as here, parties have reduced their agreement to an integrated writing, that agreement may not be varied by extrinsic evidence. *See, e.g., Charles A. Burton, Inc. v. Durkee*, 109 N.E.2d 265, 270-71 (Ohio 1952); *Columbia Gas Transmission Comp. v. Ogle*, 51 F. Supp. 2d 866, 871 (S.D. Ohio 1997) (applying Ohio law); *Tallmadge Bros. Inc. v. Iroquois Gas Transmission Sys.*,

---

[5] Plaintiffs will undoubtedly point the Court to the Connecticut Supreme Court's decision in *Macomber v. Travelers Property and Casualty Corp.*, 804 A.2d 180 (Conn. 2002). In *Macomber*, which arose out of Travelers' structured settlement program, the court denied the defendants' motion to dismiss the plaintiffs' contract claim. However, in *Macomber*, the plaintiffs' settlement agreements provided that Travelers would purchase annuities of a certain "present value" and the plaintiffs alleged that the annuities did not have the present value required by those contracts. *Id.* at 190. As noted, the Settlement Agreements issued to plaintiffs Spencer and McDuffie do not contain comparable representations regarding the present value or cost of their annuities. Moreover, *Macomber*, to the extent it applies here at all, bears only on McDuffie's breach of contract claim (which is governed by Connecticut law), and is irrelevant to that of Spencer and Strickland (which are governed by Ohio and Maryland law, respectively).

L.P., 746 A.2d 1277, 1290-91 (Conn. 2000).[6]  Accordingly, plaintiffs Spencer's and McDuffie's contract claim must be dismissed because the terms they allege were breached are not included in their integrated Settlement Agreements.

### B. Plaintiffs Admit That the Hartford Insurers Spent Exactly What They Allegedly Promised on Plaintiffs' Annuities

As noted, only plaintiff Strickland's Settlement Agreement contains a provision concerning the "cost or present value" of the annuity to be purchased in connection with his structured settlement, whereas the Agreements of Spencer and McDuffie provide only for the purchase of an annuity of *indeterminate* value.  (*See* Point II.A, above.)  But even assuming, *arguendo*, that each plaintiff's Settlement Agreement did require the purchase of an annuity having a specific "cost or present value" (Am. Compl. ¶ 58), each plaintiff's contract claim would still fail, because it is apparent from the Amended Complaint that the Hartford Insurers paid exactly what they allegedly promised to spend on the subject annuities.

Specifically, plaintiffs allege that:  (i) with respect to Spencer, Hartford Midwest promised to purchase an "annuity costing $52,000" (Am. Compl. ¶ 54(h)), and that Hartford Midwest did, in fact, spend that amount in connection with that purchase (*id.* ¶ 54(j)); (ii) with respect to Strickland, Hartford Casualty promised to purchase an "annuity costing $50,071" (*id.* ¶ 55(h)), and that Hartford Casualty did, in fact, spend that amount in connection with that purchase (*id.* ¶ 55(j)); and (iii) with respect to McDuffie, Hartford Accident promised to

---

[6] As noted, the Spencer and McDuffie Agreements contain choice of law provisions that require that they be interpreted pursuant to Ohio and Connecticut law, respectively.  (Tebbe Aff. Ex. 1, ¶ 12; *id.* Ex 2, ¶ 14.)  Because federal courts apply the choice of law rules of the forum state to claims like plaintiffs' contract claims here that arise under their diversity jurisdiction, *see Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003), Connecticut choice of law rules apply to plaintiffs' contract claims.  Connecticut courts "give[] effect to an express choice of law by the parties to a contract provided that it was made in good faith." *Elgar v. Elgar*, 679 A.2d 937, 942 (Conn. 1996).  Spencer's and McDuffie's breach of contract claims will therefore be analyzed herein according to the laws of Ohio and Connecticut, respectively.

purchase an "annuity costing $36,768.82" (*id.* ¶ 56(g)), and that Hartford Accident did, in fact, spend that amount in connection with that purchase.  (*Id.* ¶ 56(j).)

Although plaintiffs allege that the Hartford Insurers should have spent all of the funds at issue on the annuities themselves – and not on the brokers' commissions – they admit in their amended pleading that the payment of commissions is a cost that is incidental to the purchase of an annuity.  (Am. Compl. ¶ 43.)  Plaintiffs' breach of contract claims thus fail, because the Hartford Insurers did exactly what they allegedly promised to do – spend a specified sum to purchase an annuity "costing" a particular amount.

## III.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER RICO

Plaintiffs next assert a claim for violation of RICO against HFSG, Hartford Life, Hartford Life Insurance and Hartford Fire.  For the reasons discussed below, that claim cannot survive the present motion.

### A.    Plaintiffs Fail To Plead a RICO Enterprise

Plaintiffs' RICO claim should also be dismissed because plaintiffs have failed to allege the existence of a RICO "enterprise" that is distinct from the alleged RICO "persons."

RICO makes it unlawful "for any person employed by or associated with any enterprise … to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  The Supreme Court has explained that a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  It has long been established that the RICO "enterprise" must be "distinct from the person conducting the affairs of the enterprise."  *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (citing cases); *see also Egbarin v. Lewis,*

14

*Lewis & Ferraro LLC*, No. Civ. A. 3:00-CV-1043 (JCH), 2006 WL 236846, at *7 (D. Conn. Jan. 31, 2006) (Hall, J.) (citation omitted).

In the corporate context, the Second Circuit has interpreted the distinctness requirement to mean that "[a] corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85 (2d Cir. 1999) (citation omitted). Thus, where – as is alleged in this case – "employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (citation omitted). Accordingly, the courts have repeatedly held that "[p]laintiffs cannot circumvent the distinctness requirement by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *Anatian*, 193 F.3d at 89 (citing *Riverwoods Chappaqua*, 30 F.3d at 344).[7] Nor may a RICO plaintiff satisfy the requirement by alleging that the enterprise consists of affiliated corporations and their agents; as the Second Circuit has determined, corporate affiliates are not distinct from each other for RICO enterprise purposes. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063-64 (2d Cir. 1996), *vacated in part on other grounds*, 525 U.S. 128 (1998). This, however, is precisely what plaintiffs here are attempting to do.

The only RICO "persons" alleged in the Amended Complaint are HFSG, Hartford Life, Hartford Life Insurance, Hartford Fire and their brokers. (Am. Compl. ¶¶ 85-86.) Plaintiffs'

---

[7] As the Second Circuit has recognized, the person/enterprise distinctness requirement "comports with legislative intent and policy" behind § 1962(c) because it "focuses the section on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity." *Riverwoods Chappaqua*, 30 F.3d at 344 (citation omitted).

allegations make plain that the brokers involved in this action were "agents" of defendants. (*See,* *e.g.,* Am. Compl. ¶¶ 20 (alleging that Hartford Life "appointed and approved" outside brokers); 24-29 (alleging that each of the "Hartford Life Outside Approved Brokers" was "appointed by" Hartford Life[] to sell [its] structured settlement annuity products"); and 95(c) (alleging issuance of annuity contract to Ringler agent "who, in turn, *as Hartford Midwest's agent,* again mailed the annuity contract" to Spencer's attorney) (emphasis added).) [8] The only "enterprise" alleged in the Amended Complaint consists of:

> [d]efendant corporations Hartford, Hartford Life, Hartford Life Insurance Company and Hartford Fire, together with its defendant Hartford Property & Casualty affiliates and non-defendant Hartford Property & Casualty affiliates and the Approved Brokers, [who] formed an association-in-fact, for the purpose of conducting the Hartford Structured Settlement program and enhancing its other business (and sharing the goal of maximizing profits) and used this association-in-fact to defraud the Named Plaintiffs and other members of the Class.

(*Id.* ¶ 87.)

Thus, precisely as in *Riverwoods Chappaqua*, plaintiffs here allege an "enterprise" consisting of no more than the activities of the employees of the Hartford Insurers and their

---

[8] Moreover, in determining whether the distinctiveness requirement has been met, courts have looked not to the formal legal terminology used by plaintiffs, but rather, to the reality of the relationship between alleged RICO persons based on "common-sense readings of the complaints." *Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1212-16 (M.D. Fla. 2004) (citing *Cedric Kushner Promotions, Ltd. v. Don King*, 533 U.S. 158 (2001)). Thus, for example, where an individual is not formally employed by or labeled an "agent" of a defendant corporation, he or she is not sufficiently distinct from the corporation for RICO purposes if the individual was "acting on behalf" of the corporation during the relevant time frame. *Id.* at 1215; *see also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227-28 (7th Cir. 1997) (defendant corporation and its distributors not sufficiently distinct to form RICO enterprise). In this case, there is no question, based on plaintiffs' allegations, that the brokers were "acting on behalf" of the Hartford defendants, given plaintiffs' assertions, *inter alia*, that the brokers' role was "to handle the structured settlement segment of [Hartford Fire's] casualty operations" (Am. Compl. ¶ 17) and "to increase Hartford's own structured settlement business" and "build its broker referral network[.]" (*Id.* ¶ 20.)

agents, "carrying out the business" of those entities. *Riverwoods Chappaqua*, 30 F.3d at 344.

That is not sufficient to state a RICO claim. *See id.* at 345.[9]

Moreover, this Court's decision in *Abdullah v. Travelers Property Casualty Corp.*, 83 F.

Supp. 2d 289 (D. Conn. 1999) – which, as noted, is a case that arose out of Travelers' structured

settlement program – precisely illustrates why the "enterprise" alleged in plaintiffs' Amended

Complaint does not pass muster under RICO. *See Abdullah*, 83 F. Supp. 2d at 292. Plaintiffs in

*Abdullah* alleged that Travelers and its brokers, including plaintiffs Spencer's and Strickland's

annuity broker, Ringler Associates ("Ringler"), violated RICO by misrepresenting, via the mail

and interstate wires, the actual cost of the annuities that Travelers was purchasing on plaintiffs'

behalf. *Id.* at 292. This Court held that Travelers, along with its brokers and affiliated

corporations, did not constitute an "enterprise" for RICO purposes because Ringler and the other

annuity brokers were agents of Travelers. In so holding, this Court reasoned that "[t]hese

companies cannot be all knowing agents and affiliates and still meet the distinctness requirement

under 1962(c)." *Id.*

In sum, plaintiffs' RICO claim should be dismissed for failure to plead adequately the

existence of a RICO enterprise.[10]

_____

[9] *See also Goldberg v. Bell Atlantic*, No. 99 Civ. 2889 (DC), 2000 WL 1459834, at *3 (S.D.N.Y. Sep. 29, 2000) (company and its exclusive agent did not constitute a RICO enterprise); *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 164-65 (D. Conn. 2000) (granting motion to dismiss on distinctiveness grounds where alleged enterprise included only two attorneys and one of their clients who allegedly engaged in racketeering activity); *In re SmithKline Beecham Clinical Labs., Inc. Lab. Test Billing Practice Litig.*, 108 F. Supp. 2d 84, 98 (D. Conn. 1999) (holding that distinctness requirement not met where alleged enterprise consisted only of defendant corporation's officers and directors and two affiliated entities); *NRB Indus. v. R.A. Taylor & Assoc.*, No. 97 Civ. 181 (JSR), 1998 WL 3638, at *2-*3 (S.D.N.Y. Jan. 7, 1998) (company and a consulting firm it engaged to conduct research on its behalf did not constitute a RICO enterprise because the consulting firm was acting as the company's agent); *Lorentzen v. Curtis*, 18 F. Supp. 2d 322 (S.D.N.Y. 1998) (insurance company and its employees and agents did not constitute a RICO enterprise).

[10] A separate and independent basis for finding plaintiffs' RICO enterprise allegations deficient stems from the fact that the only "common purpose" alleged here is making money. (Am. Compl. ¶ 87 (alleging

**B.     Plaintiffs' RICO Claim Fails Because it Duplicates Their Contract Claim**

The mail and wire fraud allegations that form the basis for plaintiffs' RICO claims are based on the same allegations as their contract claims. (*Compare, e.g.*, Am. Compl. ¶ 75 (plaintiffs' Settlement Agreements have been breached because the Hartford Insurers purchased annuities of lesser value than was promised by those Agreements) *with id.* ¶¶ 92 (p. 45), 95-97 (pp. 47-51)[11] (the Hartford Insurers engaged in mail and wire fraud by purchasing annuities of lesser value than promised).)

Courts in this Circuit have repeatedly rejected comparable attempts to contort a breach of contract into a RICO claim. *See, e.g., Chandradat v. Navillus Tile, Inc.*, No. 03 Civ. 10093 (RJH), 2004 WL 2186562, at *6 (S.D.N.Y. Sep. 28, 2004) (dismissing RICO claim that merely restated breach of contract claim); *Int'l Telecom, Inc. v. Generadora Electrica del Oriente, S.A.*, No. 00 Civ. 8695 (WHP), 2002 WL 465291, at *10 (S.D.N.Y. Mar. 27, 2002) (dismissing RICO

---

that members of alleged enterprise acted with "the purpose of conducting the Hartford['s] Structured Settlement program and enhancing its other business (and sharing the goal of maximizing profits)").) There is a split among the lower federal courts on this issue. *Compare, e.g., Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004), *cert. denied*, 543 U.S. 956 (2004) (finding "divergent goals," and, thus, no RICO common purpose, because "[the company] wants to pay lower wages [and] the recruiters want to be paid more for services rendered (although [the company] would like to pay them less") *with Williams v. Mohawk Indus.*, 411 F.3d 1252, 1258 (11th Cir. 2005) (where complaint alleged a scheme among an employer and recruiting agencies to hire undocumented workers in an effort to keep employer's labor costs low, plaintiffs sufficiently alleged RICO common purpose of "reaping a large economic benefit from Mohawk's employment of illegal workers"), *cert. granted*, 126 S. Ct. 830 (2005) *and dismissed*, 126 S. Ct. 2016 (2006). Courts in this Circuit appear to have struck a balance between the positions taken by the Seventh and Eleventh Circuits on this issue. *Compare, e.g., Blue Cross v. SmithKline Beecham Clinical Labs., Inc.*, 62 F. Supp. 2d 544, 553 (D. Conn. 1998) (no common purpose where doctors and hospitals did not share in the pharmaceutical company's goal of "defraud[ing] public and private health care payers," but, at most, were aware of the fraud and "silenced through the use of kickbacks") *with RD Mgmt. Corp. v. Samuels*, No. 02 Civ. 4876 (SWK), 2003 WL 21254076, at *5-*6, (S.D.N.Y. May 29, 2003) (plaintiffs adequately pled common purpose where defendants allegedly collaborated in insurance fraud scheme that included receipt of illegal kickbacks, inasmuch as defendants' goal of enriching "themselves at the expense of" plaintiff is a sufficient common purpose).

[11] Plaintiffs' Complaint repeats paragraph numbers 91 through 109 (on pages 45-55 and 55-61) and 104 through 108 (on pages 53-55, 60 and 61.). In order to distinguish between these identically numbered paragraphs, defendant will identify these duplicate paragraphs by page, as well as paragraph number (*e.g.*, Compl. ¶ 104 (p. 61)).

claim with prejudice where counterclaimant was "inappropriately attempting to balloon a garden-variety breach of contract or fraud matter into an unworkable RICO suit"); *Kelly v. Dietz*, No. 99-CV-0689E(SC), 2000 WL 914127, at *2 (W.D.N.Y. June 16, 2000) (same).  Plaintiffs' similar attempt here to "balloon" their breach of contract claims into RICO claims should likewise be rejected.  *Int'l Telecom*, 2002 WL 465291, at *10.

### C.   Spencer's and McDuffie's Underlying Mail and Wire Fraud Violations Fail for Lack of Reasonable Reliance

The mail and wire fraud violations upon which Spencer's and McDuffie's RICO claim is based arise from allegations that the Hartford Insurers and brokers misrepresented the "true cost" of the annuities that were to be purchased in connection with their respective settlements.  (Am. Compl. ¶ 93 (pp. 45-6).)  As noted in Point II.A, *supra*, these alleged misrepresentations are not included in Spencer's and McDuffie's respective Settlement Agreements, which are silent as to the cost or present value of the annuities at issue.

As is the case with their common law fraud claims (*see* Point IV.C, *infra*), Spencer's and McDuffie's mail and wire fraud allegations (and thus their RICO claims) must be dismissed for lack of justifiable reliance, because the misrepresentations that form the basis of those claims are inconsistent with the unambiguous terms of their Settlement Agreements.  *See, e.g., Feeley v. Whitman Corp.*, 65 F. Supp. 2d 164, 175 (S.D.N.Y. 1999) (dismissing RICO claim for lack of justifiable reliance where plaintiffs could have relied on the alleged misrepresentations "only by disregarding the express terms of the [contracts]"); *Martinez Tapia v. Banque Indosuez*, No. 99-7170, 1999 U.S. App. LEXIS 29260, at *5 (2d Cir. Nov. 3, 1999) (finding plaintiff's RICO claim barred by parol evidence rule, and noting that "[a] party to a written contract generally cannot avoid its terms by claiming inconsistent oral representations"); *Knez Optical, Inc. v. Singer Optical Group, Inc.*, No. 94-7582, 1995 WL 649262, at *4-*5 (E.D. Pa. Nov. 3,

1995) (where plaintiff entered into a fully integrated franchise agreement with defendant after defendant allegedly misrepresented the franchise's expected earnings, court dismissed RICO claim for lack of justifiable reliance because the alleged misrepresentations were not included in franchise agreement and "the parol evidence rule applies in cases brought under civil RICO when the alleged predicate act is mail and/or wire fraud"); *One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283 (D.D.C. 1988) (dismissing RICO claim for lack of justifiable reliance where misrepresentations that allegedly were made during negotiation of agreement were not included in the parties' integrated contract).

## IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR COMMON LAW FRAUD

Plaintiffs next assert a claim for common law fraud against the Hartford Insurers (*i.e.*, Hartford Accident, Hartford Casualty and Hartford Midwest).  As discussed below, this claim is without merit.

### A.  Choice of Law Analysis

Plaintiffs plead both diversity and federal question jurisdiction.  (Am. Compl. ¶ 1.)  In diversity cases, federal courts apply the choice of law rules of the forum state.  *See Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003) (citation omitted).  In federal question cases, courts generally apply federal common law choice of law rules.  *See In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992) (citation omitted).  Here, the applicable federal and forum state choice of law rules both require that plaintiffs' tort claims be analyzed pursuant to the law "of the jurisdiction with the greatest interest in the litigation."  *Id.* (citation omitted) (applying federal common law choice of law rules); *Svege v. Mercedes-Benz Credit Corp.*, 182 F. Supp. 2d 226, 229 (D. Conn. 2002) (Connecticut uses the most significant interest test when conducting choice of law analysis).

In determining which jurisdiction has the "most significant interest" in a tort claim, courts consider: (i) the place of the injury; (ii) the place where the conduct causing the injury occurred; (iii) the residence and places of incorporation and business of the parties; and (iv) the place where the parties' relationship, if any, is centered. *See, e.g., Benefit Concepts N.Y. v. New Eng. Life Ins. Co.*, No. 03 CV 1456 (DJS), 2004 WL 1737452, at *4 (D. Conn. July 30, 2004) (citation omitted). This analysis is unnecessary with respect to the issue of choice of law, however, because the outcome is the same under the law of each potentially applicable jurisdiction – specifically, those of plaintiffs' residences and those invoked by the individual Settlement Agreements (*i.e.*, Ohio law for plaintiff Spencer, Connecticut and Oklahoma law for plaintiff McDuffie and Pennsylvania and Maryland law for plaintiff Strickland). As set forth below, plaintiffs' fraud claim fails under each of those states' laws.

**B.     Plaintiffs' Fraud Claim is Barred by the Economic Loss Doctrine**

As noted, plaintiffs' common law fraud claim duplicates their breach of contract claim. (*Compare, e.g.*, Am. Compl. ¶ 75 (alleging that plaintiffs' Settlement Agreements have been breached because the Hartford Insurers purchased annuities of lesser value than were promised by those Agreements) *with id.* ¶ 91 (p. 55) (alleging that plaintiffs have been defrauded because the Hartford Insurers purchased annuities of lesser value than promised).) Under such circumstances, the economic loss doctrine (or state-specific variants thereof) prohibits plaintiffs Spencer and Strickland from bringing fraud claims and limits them to a breach of contract remedy, inasmuch as the "heart of [their] claims is the defendant's failure to perform the contract" at issue. *Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 763 F. Supp. 1327 (D. Md. 1991) (applying Maryland law), *aff'd in part, rev'd in part on other grounds*, 978 F.2d 140 (4th Cir. 1992); *see also Ebenisterie Beaubois Ltee. v. Marous Bros. Constr., Inc.*, No. 02 CV 985, 2002 WL 32818011, at *10 (N.D. Ohio Oct. 17, 2002) ("Under Ohio law, 'the existence

of a contract action [generally] excludes the opportunity to present the same case as a tort claim'.") (quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio App. 1996)); *Hart v. Arnold*, 884 A.2d 316 (Pa. Super. Ct. 2005) (Pennsylvania law requires dismissal of fraud claims that "are intertwined with breach of contract claims and the duties allegedly breached are created and grounded in the contract itself"); *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 21 (Pa. Super. Ct. 2002) (under Pennsylvania law, a tort claim that "essentially duplicate[s]" a contract claim must be dismissed).

With respect to the fraud claims asserted by plaintiff McDuffie, courts in both Connecticut and Oklahoma have dismissed tort claims pursuant to this same principle. *See, e.g.*, *Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649, 653 (Okla. 1990); *Milltex Props. v. Johnson*, No. 565866, 2004 WL 615748, at *3 (Conn. Super. Ct. Mar. 15, 2004) (listing Connecticut decisions that have followed this rule). While Oklahoma courts have, to date, applied this rule only in product liability cases, *see, e.g.*, *Waggoner*, 808 P.2d at 653, no court has suggested that, if faced with the question, Oklahoma courts would not follow the path set by numerous other states and apply this rule in other contexts. Similarly, while the lower Connecticut courts are divided on the issue, no Connecticut appellate court has held that this rule is confined to product liability disputes. *See Milltex*, 2004 WL 615748, at *5.

Accordingly, plaintiffs' fraud claim should be dismissed as duplicative of their contract claim.

### C. Plaintiffs Spencer and McDuffie Cannot Have Justifiably Relied on the Alleged Misrepresentations

In order to state a claim for fraud, plaintiffs Spencer and McDuffie must allege that they reasonably relied on the Hartford Insurers' alleged misrepresentations. *See, e.g.*, *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 612 (6th Cir. 2001) (applying Ohio law and citing *Daup*

*v. Tower Cellular, Inc.*, 737 N.E.2d 128, 138 (Ohio 2000)); *Cohn v. Mass. Mut. Life Ins. Co.*, 189

F.R.D. 209, 215-16 (D. Conn. 1999) (applying Connecticut law); *Felix v. Lucent Techs., Inc.*,

387 F.3d 1146, 1164-65 (10th Cir. 2004) (applying Oklahoma law); *cert. denied*, 125 S. Ct. 2961

(2005). Plaintiffs Spencer and McDuffie are barred as a matter of law from satisfying this basic

pleading requirement because the misrepresentations at issue – namely, the alleged promises by

the Hartford Insurers to purchase an annuity of a certain "cost or present value" (Am. Compl.

¶¶ 54(f), 56(f), 72-75) – are inconsistent with the terms regarding monetary consideration that

are contained in their respective Settlement Agreements (*see* Point II.A, *supra*), and, as a result,

reliance upon them is precluded.[12]

   All of the states whose laws are potentially applicable to Spencer's and McDuffie's fraud

claim forbid reliance on extrinsic representations that are inconsistent with the terms of an

integrated contract. *See, e.g., Columbia Gas*, 51 F. Supp. 2d at 873 (applying Ohio law) (fraud

claim barred where alleged misrepresentations were inconsistent with the plain language of the

agreement, because plaintiff should have "carefully read" and "negotiate[ed the] terms" of the

agreement before signing it); *Retrofit Partners v. Lucas Indus., Inc.*, 201 F.3d 155, 162-63 (2d

Cir. 2000) (applying Connecticut law) (dismissing fraud claim for lack of justifiable reliance

where alleged oral misrepresentation was inconsistent with written contract); *Silver v. Slusher*,

770 P.2d 878, 882 n.8 (Okla. 1988) (applying Oklahoma law) ("An action for fraud may not be

---

[12] Although this rule is also followed in Pennsylvania and Maryland – the two jurisdictions whose laws may be applicable to plaintiff Strickland's tort claims, this argument is not applicable to his fraud claim because, unlike plaintiffs Spencer and McDuffie, the alleged misrepresentations regarding the present value of Strickland's future periodic payments are contained in – and, thus, not inconsistent with – his Settlement Agreement. (*Compare, e.g.,* Am. Compl. ¶ 55(b) (alleging that Strickland's Settlement Agreement provides for future periodic payments with a "present value" of $50,071.00) *with id.* ¶ 73 (alleging that Hartford Casualty represented that it would purchase an annuity with a "present value" of $50,071.00).) The fact that the alleged misrepresentations are contained in his Settlement Agreement only highlights the fact that Strickland's fraud claim should be dismissed as duplicative of his contract claim.

predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence.") (citations and emphasis omitted).

Accordingly, because the alleged misrepresentations are at odds with the integrated Settlement Agreements at issue, plaintiffs Spencer and McDuffie – both of whom:  (i) were represented by counsel (Am. Compl. ¶¶ 54, 56); and (ii) averred in their respective Settlement Agreements that they had read and understood those documents and were not relying on any representations made by the Hartford Insurers (*see* Spencer Agreement ¶ 8; McDuffie Agreement ¶ 12) – are barred as a matter of law from claiming that they justifiably relied on those statements.  As a result, their fraud claim must be dismissed with prejudice.

### D.    Plaintiff McDuffie's Fraud Claim Is Barred by the Statute of Limitations

Plaintiff McDuffie's fraud claim is also barred by the statutes of limitations of both states whose laws are potentially applicable to his tort claims, Connecticut and Oklahoma.  Fraud claims are subject to a three-year statute of limitations under Connecticut law, *see* Conn. Gen. Stat. § 52-577, and a two-year statute of limitations under Oklahoma law.  *See* Okla. Stat. tit. 12, § 95.  McDuffie's Settlement Agreement was executed on February 8, 2002, and, according to the Amended Complaint, Hartford Accident's alleged misrepresentations were made "during settlement negotiations."  (Am. Compl. ¶ 96 (p. 58).)  McDuffie brought his fraud claim more than three years later, on October 31, 2005, and, as a result, that claim is time-barred by both of the potentially applicable statutes of limitations.

For these reasons, plaintiffs' common law fraud claim should be dismissed in its entirety with prejudice.

## V.    PLAINTIFFS CANNOT STATE A CLAIM FOR CIVIL CONSPIRACY

Plaintiffs next assert a claim for civil conspiracy against all defendants.  This claim fails because plaintiffs cannot allege adequately any unlawful overt act, as they must under the law of

each jurisdiction potentially applicable to this claim.[13]  In order to state a claim for civil

conspiracy, a plaintiff must allege:  (1) a combination of two or more persons, (2) to do an

unlawful act or a lawful act by unlawful means, (3) an act done by one or more of the

conspirators pursuant to the scheme and in furtherance of the object and (4) that such act results

in damage to the plaintiff.  *Marshak v. Marshak*, 628 A.2d 964, 970 (Conn. 1993), *overruled on

other grounds sub nom. State v. Vakilzaden*, 742 A.2d 767 (Conn. 1999); *see also Roberson v.

PaineWebber, Inc.*, 998 P.2d 193, 201 (Okla. Civ. App. 1999), *cert. denied*, (Jan. 20, 2000)

(same); *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 650 A.2d 260, 265 (Md.

1994) (same); *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000)

(same); *Geo-Pro Servs. v. Solar Testing Labs.*, 763 N.E.2d 664, 674 (Ohio Ct. App. 2001) ("[t]he

tort of civil conspiracy is a malicious combination of two or more persons to injure another in

person or property, in a way not competent for one alone, resulting in actual damages [and] [a]n

underlying unlawful act is required").

Moreover, the underlying act on which the conspiracy claim is based must be a tort.  *See

Harp v. King*, 835 A.2d 953, 972 n.37 (Conn. 2003) (noting that civil conspiracy claim must be

"joined with an allegation of substantive tort"); *Chesher v. Neyer*, 392 F. Supp. 2d 939, 959

(S.D. Ohio 2005) (interpreting Ohio law and holding "a civil conspiracy must be a conspiracy to

commit some type of underlying intentional tort"); *Gaylord Entertainment Co. v. Thompson*, 958

P.2d 128, 148 n.85 (Okla. 1998) ("In essence, a civil conspiracy claim enlarges the pool of

potential defendants from whom a plaintiff may recover *for an underlying tort*") (emphasis

added); *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005) (under Pennsylvania law, "A

---

[13] As with respect to plaintiffs' fraud claims, five states' laws are potentially applicable to plaintiffs' civil
conspiracy claims.  *See* Point III.A *supra*.  The civil conspiracy claims are therefore analyzed herein
under the law of each of those states – namely, Ohio, Connecticut, Oklahoma, Pennsylvania and
Maryland.

claim for civil conspiracy cannot be pled without also alleging an underlying tort") (internal

citations omitted); *Alleco Inc. v. Harry & Jeanette Weinberg Found.*, 665 A.2d 1038, 1045 (Md.

1995) (under Maryland law, there can be no action for conspiracy "unless the acts actually done,

if done by one person, would constitute a tort") (internal citations omitted).

For the reasons set forth in Point IV, *supra*, plaintiffs' fraud claim is fatally deficient.

Accordingly, their civil conspiracy claim should be dismissed as well. *See Litchfield Asset*

*Mgmt. Corp. v. Howell*, 799 A.2d 298, 306 (Conn. App. 2002) (noting that, where "the plaintiff

is unable to establish the underlying cause of action for fraud, the cause of action for conspiracy

must fail").

## VI.   PLAINTIFFS CANNOT RECOVER FOR UNJUST ENRICHMENT IN THE FACE OF AN EXPRESS CONTRACT

Plaintiffs' final claim alleges unjust enrichment against all defendants.  This claim should

be dismissed because the parties' relationships are governed by express contracts.  Under the

laws of each of the potentially applicable jurisdictions, the existence of an express contract bars a

claim for unjust enrichment.  *See, e.g., United States Fid. & Guar. Co. v. S.B. Phillips Co.*, 359

F. Supp. 2d 189, 211 (D. Conn. 2005) (applying Connecticut law) ("a claim for unjust

enrichment or *quantum meruit* may not be brought when an express contract exists and the

contract provides an adequate remedy at law."); *Kwang Dong Pharm. Co. v. Myun Ki Han*, 205

F. Supp. 2d 489, 497 (D. Md. 2002) (applying Maryland law) (dismissing unjust enrichment

claims because "unjust enrichment claims are barred where an express contract exists"); *Klusty v.*

*Taco Bell Corp.*, 909 F. Supp. 516, 521 (S.D. Ohio 1995) (dismissing unjust enrichment claims

because "Ohio does not recognize unjust enrichment as an alternative theory of recovery when

an express contract covers the same subject"); *United States ex rel. Trim v. McKean*, 31 F. Supp.

2d 1308, 1316 (D. Okla. 1998) (applying Oklahoma law) ("doctrine of unjust enrichment applies

to situations [where] there is no legal contract"); *Harold v. McGann*, No. 05-CV-1493, 406 F. Supp. 2d 562, 578 (E.D. Pa. Dec. 29, 2005) (applying Pennsylvania law) ("[d]ismissal of an unjust enrichment claim is appropriate upon a motion to dismiss when the relationship between the parties is founded on a written instrument").

Plaintiffs' unjust enrichment claim fails for an additional reason:  as discussed in Point II.B, *supra*, none of plaintiffs can credibly allege that the Hartford Insurers have been unjustly enriched, inasmuch as they have not alleged that the Hartford Insurers with whom they contracted failed to make the payments recited in their respective Settlement Agreements or to otherwise fulfill the terms of those contracts.  *See Turner v. Langenbrunner*, 2004 WL 1197213, at *5 (Ohio App. June 1, 2004) (plaintiff's unjust enrichment claim failed because the defendant had fulfilled the terms of the parties' contract and the parol evidence rule barred plaintiff's attempt to vary the contract); *Feng v. Dart Hill Realty, Inc.*, 601 A.2d 547, 549 (Conn. App. 1992) (denying plaintiff's unjust enrichment claim where the court found that the defendant had fulfilled the terms of the parties' purchase and sale agreement).

Accordingly, plaintiffs' unjust enrichment claim should be dismissed with prejudice.[14]

---

[14] Plaintiffs framed their request for a "constructive trust" as a claim for relief in their Amended Complaint.  (Am. Compl. ¶¶ 133-37.)  As the Connecticut Supreme Court noted in *Macomber*, rather than a substantive cause of action upon which the complaint is predicated, this count requests a remedy that should be left to the discretion of the trial court in the event the plaintiffs were to prevail at trial. *Macomber*, 804 A.2d at 183 n.3.

## <u>CONCLUSION</u>

For the reasons set forth above, plaintiffs' Amended Complaint should be dismissed in its

entirety, with prejudice.

Dated:        Stamford, Connecticut
              June 14, 2006


                              WIGGIN AND DANA LLP


                              By:    /s/ James H. Bicks
                                     James H. Bicks (ct 04729)
                                     Robert M. Langer (ct 06305)

                              400 Atlantic Street
                              P.O. Box 110325
                              Stamford, Connecticut  06911-0325
                              (203) 363-7600

                              Charles E. Tebbe III
                              John W.R. Murray
                              MORRISON & FOERSTER LLP
                              1290 Avenue of the Americas
                              New York, New York  10104-0050
                              (212) 468-8000

                              Attorneys for Defendants